**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**JOHN KOTRUCH,**

**Plaintiff,**

v.

**5:22-CV-1343**
**(FJS/ML)**

**THOR MOTOR COACH, INC.;**
**MEYER'S RV CENTERS, LLC;**
**FREIGHTLINER CUSTOM CHASSIS**
**CORPORATION; and UNITED**
**SERVICE PROTECTION CORP.,**

**Defendants.**

---

| APPEARANCES | OF COUNSEL |
|---|---|
| **BURDGE LAW OFFICE** | **ELIZABETH A. WELLS, ESQ.** |
| 8250 Washington Village Drive | |
| Dayton, Ohio 45458 | |
| Attorneys for Plaintiff | |
| | |
| **ADAMS LECLAIR LLP** | **ERIN F. CASEY, ESQ.** |
| 28 East Main Steet | **STACEY E. TRIEN, ESQ.** |
| Suite 1500 | |
| Rochester, New York 14614 | |
| Attorneys for Defendants | |
| Thor Motor Coach, Inc. and | |
| Meyer's RV Centers, LLC | |
| | |
| **WEBSTER SZANYI LLP** | **THOMAS S. LANE, ESQ.** |
| 424 Main Street | |
| Suite 1400 | |
| Buffalo, New York 14202 | |
| Attorneys for Defendant | |
| Freightliner Custom Chassis Corp. | |
| | |
| **UNITED SERVICE PROTECTION** | **NO APPEARANCES** |
| **CORP.** | |

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

## I. BACKGROUND

On December 28, 2019, Plaintiff purchased a 2019 Thor "Tuscany 45MX" "brand new, fully outfitted, luxury motor home" (hereinafter referred to as "the RV") from Defendant Meyer's RV Centers, LLC ("Defendant Meyer's RV"), doing business as "Camping World RV Sales," in Syracuse, New York. *See* Dkt. No. 21, Amend. Compl., at ¶¶ 9, 27. At that time, Plaintiff paid $41,000 down toward the total purchase price of the RV, which was $271,685. *See id.* at ¶ 27. Plaintiff alleges that Defendant Thor Motor Coach, Inc. ("Defendant Thor") manufactured, assembled, and placed the RV into the stream of commerce; and, in its construction, Defendant Thor acquired and used a chassis made by Defendant Freightliner Custom Chassis Corporation ("Defendant Freightliner").[1] *See id.* at ¶ 28-1.[2] Defendant United Service Protection Corp. allegedly contracted with Defendant to provide repair services for the vehicle.[3] *See id.* at ¶ 11.

According to Plaintiff, immediately after acquiring the RV, he discovered a number of severe manufacturing flaws, defects, and other non-conformities, including the following: (1) water leakage in the driver's cabin and living quarters; (2) alternator, air conditioning system,

---

[1] Defendant Freightliner filed an answer in response to Plaintiff's Amended Complaint rather than pursuing a motion to dismiss. *See* Dkt. No. 23.

[2] Plaintiff appears to have misnumbered his Amended Complaint, resulting in two paragraphs numbered 28 and 29. For clarity, the Court refers to the first set of paragraphs 28 and 29 as 28-1 and 29-1 and the second set as 28-2 and 29-2.

[3] Defendant United Service Protection Corp. has not appeared in this action, and there is no indication on the docket that Plaintiff served it with his Amended Complaint. *See* Dkt. No. 29.

and/or coolant line leaks or "smart wheel" failure defects; (3) non-functioning toilet; (4) defects in the heating system; (5) non-functioning vehicle turning cameras and back-up cameras; and (6) interior paneling pulling away from the wall. *See id.* at ¶ 29-1. Plaintiff alleges that Defendants Meyer's RV and Freightliner retained the RV from the date of purchase and possessed it for approximately three months to fix the numerous problems. *See id.* at ¶ 28-2. Plaintiff asserts that he later received copies of service records relating to Defendant Meyer's RV's repair work, which reflected that there had been "prior repairs" performed on the RV before Plaintiff even purchased it. *See id.* at ¶ 40.

Plaintiff retrieved the RV from Defendant Meyer's RV on March 17, 2020; and, while driving it to his home in New Hampshire, Plaintiff allegedly discovered that most of the defects of which he had complained were not, in fact, repaired. *See id.* at ¶¶ 29-2, 30. Plaintiff alleges that the RV still had water leakage and the heating system was not working properly. *See id.* at ¶ 30. Plaintiff took the RV to an authorized service facility in New Hampshire in April 2020, which discovered that the hoses to the forward heater had been installed improperly at Defendant Thor's factory and there were "a number of other, less serious defects [that] had not been corrected, as well as the unresolved problem with the leakage." *See id.* Plaintiff asserts that, in the following months, "[l]iterally dozens of new problems arose, in varying degrees of severity, including problems with the electrical system, the transmission, and the air conditioner;" and he took the RV to another authorized service facility where it remained from June 9, 2020 to July 16, 2020 in another unsuccessful attempt to repair it. *See id.* at ¶ 31.

Plaintiff contends that, as part of his efforts to obtain relief from Defendants, he personally drove the RV from New Hampshire to Defendant Thor's main service facility in Indiana, where it remained for another three months, from November 2, 2020 to February 9,

2021, so that Defendant Thor could perform the repairs itself. *See id.* at ¶ 33. In a letter dated February 1, 2021, Plaintiff allegedly "pointed out that in the first sixty weeks since he had purchased [the RV], it had been in one repair facility or another for fifty of those sixty weeks and that, despite this, it had never been rendered fully operational." *See id.* When Plaintiff attempted to pick up the RV on February 8, 2021, the windshield wiper fluid was frozen; and, the next day, after leaving the factory, Plaintiff discovered that the turn signal cameras and navigation system were not working. *See id.* at ¶ 20. Plaintiff returned to the factory on February 10, 2021, for repairs, at which point all three video cameras had failed. *See id.* When Plaintiff picked it up again on February 12, 2021, a mirror broke, and a loud banging noise started from the front right of the RV. *See id.*

In early April 2021, Plaintiff drove the RV to Montana for a camping trip; and, despite the various repair attempts, the heating system in the RV failed during the trip. *See id.* at ¶ 34. He then presented the RV for additional repairs to the Yellowstone Mobile RV Service in Livingston, Montana. *See id.* at ¶ 21. Following that repair attempt, Plaintiff allegedly revoked his acceptance of the RV on April 20, 2021, in accordance with the provisions of Section 2-608 of the Uniform Commercial Code, "due to the Defendants' longstanding, persistent failure to cure their respective breaches of warranty." *See id.* at ¶ 34. Plaintiff asserts that he subsequently confirmed such revocation via an e-mail message on May 9, 2021, and in letters dated May 27, 2021, and June 18, 2021, as well as in a confirmatory letter dated September 27, 2021, signed by his counsel. *See id.* at ¶¶ 22, 35.

In total, since Plaintiff purchased the RV, Defendants, through their authorized representative repair facilities in New York, New Hampshire, Montana, Missouri, Ohio, and Indiana – including Camping World Syracuse, Camping World London, Camping World St.

Louis, Freightliner New Hampshire, Cummins Northeast, Freightliner Londonderry, the Thor Factory, Camping World Chichester, and one or more mobile repair technicians from Yellowstone Mobile RV Services in Livingston, Montana – were unable to effectively repair the RV. *See id.* at ¶¶ 3, 15-18. As such, Plaintiff commenced this action on December 14, 2022. *See* Dkt. No. 1, Compl.

The Court granted Plaintiff leave to file an Amended Complaint, which he filed on March 17, 2023. *See* Dkt. Nos. 18, 21. In his Amended Complaint, Plaintiff asserts the following causes of action:

> (1) Breach of warranty against Defendants Thor, Meyer's RV, and Freightliner;
>
> (2) Fraud and misrepresentation against Defendants Thor and Meyer's RV;
>
> (3) Breach of contract against Defendant United Service Protection Corp.;
>
> (4) Violations of New York Consumer Protection Laws, specifically General Business Law ("GBL") §§ 349 and 350, against Defendants Thor and Meyer's RV;
>
> (5) Violations of New York's Motor Vehicle Lemon Law against Defendants Thor and Freightliner;
>
> (6) Revocation of acceptance against Defendants Thor and Meyer's RV; and
>
> (7) Violations of the Magnuson-Moss Warranty Act against Defendants Thor and Meyer's RV.

*See* Dkt. No. 21 at ¶¶ 26-130.[4]

In response, Defendants Thor and Meyer's RV (hereinafter collectively referred to as "the Moving Defendants") jointly filed a motion to dismiss Plaintiff's Amended Complaint

---

[4] The Court identified the Defendants alleged in each cause of action based on the language in the facts of each claim. Plaintiff did not identify the Defendants against whom he alleges each cause of action in the claim's headings, which apparently caused Defendants Meyer's RV and Thor some confusion as evidenced in their memoranda.

pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, which is pending before the Court. *See* Dkt. No. 24. Plaintiff opposes that motion. *See* Dkt. No. 25.

## II. DISCUSSION

### A. Motion to dismiss standard

"When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must accept the material facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *LMC Indus. Contractors, Inc. v. Dominion Energy Transmission, Inc.,* No. 5:20-CV-677 (FJS/ATB), 2021 U.S. Dist. LEXIS 159441, *3 (N.D.N.Y. Aug. 24, 2021) (Scullin, S.J.) (citing *Interpharm, Inc. v. Wells Fargo Bank, Nat'l Ass'n,* 655 F.3d 136, 141 (2d Cir. 2011) (citation omitted)). However, the court is not required to credit legal conclusions, bare assertions, or conclusory allegations. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678-81 (2009) (citations omitted). As such, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting [*Bell Atl. Corp. v. Twombly*, 550 U.S.] at 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 [2007]). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing [*Twombly*, 550 U.S.] at 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929). Therefore, under this standard, a plaintiff must support his claims with sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted). Thus, if the plaintiff has not "'nudged [his] claims' . . . 'across the line from conceivable to plausible,'" the court must dismiss the complaint. *Id.* at 680 (quoting [*Twombly*, 550 U.S. at 570]).

## B. Applicable law

The Moving Defendants argue that New York law applies to Plaintiff's claims against Defendant Meyer's RV based on the terms of the RV's Purchase Contract. *See* Dkt. No. 24-12, Moving Defs' Memorandum in Support, at 15. That contract allegedly states, "'Any controversy, dispute or claim arising out of or relating to this Agreement or breach thereof shall be interpreted under the laws of the state in which the Dealer is located . . .'" *See id.* (quoting Dkt. No. 24-4, Purchase Contract, at ¶ 14). The Moving Defendants also assert that Defendant Thor's Limited Warranty provides that Indiana law applies to all claims against it. *See id.* (citing Dkt. No. 24-10, Thor's Ltd. Warranty, at 5).

Plaintiff does not directly address the Moving Defendants' choice-of-law claims but argues that their assertions "depend on the interpretation and/or enforceability of the terms of the Thor Warranty, Purchase Contract, Extended Service Contract, or other documents," and the enforceability of provisions within those contracts "depends on legal determinations such as choice-of-law; [and] whether the disclaimers are conspicuous and/or contain certain terms[,]" which are not "determinations [that] can be made at the pleading stage[.]" *See* Dkt. No. 25, Pl's Memorandum in Opposition, at 15-16.

"The Second Circuit has held that a party may consent to the application of another state's law, notwithstanding New York choice of law principles." *HSM Holdings, LLC v. Mantu I.M. Mobile Ltd.*, No. 20-cv-00967 (LJL), 2021 U.S. Dist. LEXIS 45110, *72 (S.D.N.Y. Mar. 10, 2021) (citing *American Fuel Corp.* [*v. Utah Energy Dev. Co.*], 122 F.3d [130,] 134 [(2d Cir. 1997)]). In a contract case, the consented-to "choice of law provision applies only to the [a]greement's construction and does not cover collateral claims arising from the [a]greement[.]" *Id.* (citations omitted). "Under New York conflict of law, a choice of law provision in the

parties' contract is 'entitled to a presumption of enforceability.'" *AEI Life, LLC v. Lincoln Benefit Life Co.*, 225 F. Supp. 3d 136, 143 (E.D.N.Y. 2016) (quoting *Dukes Bridge LLC v. Sec. Life of Denver Ins. Co.*, No. 10-CV-5491, 2015 U.S. Dist. LEXIS 77724, 2015 WL 3755945, at *4 (E.D.N.Y. June 16, 2015) (quoting *Aguas Lenders Grp. v. Suez, S.A.*, 585 F.3d 696, 700 (2d Cir. 2009)) (other citation omitted)).

In this case, Plaintiff's Purchase Contract with Defendant Meyer's RV provides that "[a]ny controversy, dispute or claim arising out of or relating to this Agreement or breach thereof shall be interpreted under the laws of the state in which Dealer is located and venue will be in the state and county in which Dealer is located or the applicable federal court."[5]  *See* 24-4, Purchase Contract, at 3.  It is undisputed that Plaintiff purchased the RV from Defendant

_____

[5] "Generally, when considering dismissal pursuant to Rule 12(b)(6), the court only considers matters within the four corners of the complaint; however, it may, in addition consider matters outside the complaint if those matters consist of (1) documents attached to the complaint or answer; (2) documents incorporated by reference in the complaint, and provided by the parties; (3) documents that, although not incorporated by reference, are 'integral' to the complaint; or (4) any matter of which the court can take judicial notice for the factual background of the case." *Honeywell Int'l Inc. v. Citgo Petroleum Corp.*, 574 F. Supp. 3d 76, 81 (N.D.N.Y. 2021) (Scullin, S.J.) (citing *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (quotations omitted)).  "Moreover, even if a document is not incorporated by reference in the complaint, the court may still consider it when the complaint "'relies heavily upon its terms and effect," thereby rendering the document "integral" to the complaint. . . . However, "even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." . . . "It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." . . . '" *Id.* at 81-82 (quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (internal quotations omitted)).  In this case, Plaintiff does not directly incorporate by reference his Purchase Contract and other sales documents with Defendant Meyer's RV or Defendant Thor's Limited Warranty into his Amended Complaint.  However, by the nature of Plaintiff's causes of action alleging breaches of such agreements, the Court finds that they are "integral" to Plaintiff's Amended Complaint.  Notably, Plaintiff disputes whether the Court can consider these documents as they were not attached to his complaint, but he never challenges their relevance, authenticity, or accuracy.  The Court therefore finds that such documents are admissible, as they appear attached to the Moving Defendants' memoranda, for purposes of deciding the pending motion.

Meyer's RV's business, Camping World RV Sales, located in Syracuse, New York. Thus, the

Court finds that it is appropriate for it to apply New York law when considering Plaintiff's

causes of action against Defendant Meyer's RV pertaining to the Purchase Contract.

Defendant Thor's Limited Warranty with Plaintiff similarly contains a choice of law

provision, as well as a forum selection clause. [6] That Limited Warranty provides the following:

> . . . **THIS LIMITED WARRANTY SHALL BE
> INTERPRETED AND CONSTRUED IN ACCORDANCE
> WITH THE LAWS OF THE STATE OF INDIANA. ANY
> AND ALL CLAIMS, CONTROVERSIES AND CAUSES OF
> ACTION ARISING OUT OF OR RELATING TO THIS
> LIMITED WARRANTY, WHETHER SOUNDING [IN]
> CONTRACT, TORT OR STATUTE, SHALL BE
> GOVERNED BY THE LAWS OF THE STATE OF
> INDIANA, INCLUDING ITS STATUTE OF LIMITATIONS,
> WITHOUT GIVING EFFECT TO ANY CONFLICT OF
> LAW RULE THAT WOULD RESULT IN THE
> APPLICATION OF THE LAWS OF A DIFFERENT
> JURISDICTION.**

*See* Dkt. No. 24-10, Limited Warranty, at 5.

Based upon this consented-to language in Defendant Thor's Limited Warranty, the Court

will apply Indiana law with respect to Plaintiff's causes of action against Defendant Thor and

pertaining to this Limited Warranty.

### C. Plaintiff's first cause of action for breach of warranty

The Moving Defendants argue that Plaintiff's first cause of action for breach of an

express warranty against Defendant Thor is time-barred, and his claim for breach of implied

---

[6] The Moving Defendants acknowledge the forum selection clause designating Indiana as the
exclusive jurisdiction for legal disputes related to an alleged breach of warranty, but Defendant
Thor "has consented to jurisdiction of this matter in New York in order to avoid Plaintiff having
to file individual suits in both Indiana and in the jurisdiction where the Motorhome was
purchased (New York)." *See* Dkt. No. 24-12 at 11 n.1.

warranties against Defendant Thor is barred by the disclaimer in the Limited Warranty. *See* Dkt. No. 24-12 at 18. With respect to Defendant Meyer's RV, the Moving Defendants also argue that Plaintiff's claim for breach of express and implied warranties fails because the Purchase Contract disclaims all warranties. *See id.* Plaintiff asserts in response that his complaint is sufficient because it provides Defendants with fair notice of his claims.[7] *See* Dkt. No. 25 at 10. The Court addresses Plaintiff's claim with respect to each of the Moving Defendants in turn.

### 1. *Defendant Thor*

First addressing Plaintiff's claim against Defendant Thor for breach of warranty, "[t]he UCC provides that when a seller makes 'any affirmation of fact or promise . . . to the buyer which relates to the goods and becomes part of the basis of the bargain,' then the seller 'creates an express warranty that the goods shall conform to the affirmation or promise.'" *Kenworth of Indianapolis, Inc. v. Seventy-Seven Ltd.*, 134 N.E.3d 370, 377 (Ind. 2019) (quoting [Ind. Code] § 26-1-2-313(1)(a)). With respect to implied warranties, the Indiana Code provides that, "[u]nless excluded or modified [under Ind. Code § 26-1-2-316], a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Ind. Code § 26-1-2-314(1). The Indiana Code also provides an implied warranty of fitness for the particular purpose. *See* Ind. Code § 26-1-2-315. A party can exclude or modify either of the implied warranties of merchantability or fitness if it does so in a conspicuous writing. *See* Ind. Code § 26-1-2-316(2). By way of example, the Indiana Code

---

[7] As noted above, this is not the plausibility standard that the Supreme Court requires for assessing motions to dismiss under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

explains that "[l]anguage to exclude all implied warranties of fitness is sufficient if it states

. . . that 'There are no warranties which extend beyond the description on the face hereof.'" *Id.*

The Indiana Code also sets forth the applicable statute of limitations, providing that an action for breach of any contract for sale, including a breach of warranty, must be commenced within four years after the cause of action accrues. *See* Ind. Code § 26-1-2-725(1). However, "[b]y the original agreement the parties may reduce the period of limitation to not less than one (1) year[.]" *Id.*; *see New Welton Homes v. Eckman*, 830 N.E.2d 32, 35 (Ind. 2005) (noting that "Indiana law generally holds that contractual limitations shortening the time to commence suit are valid, at least so long as a reasonable time is afforded." (internal quotation omitted)).

The Moving Defendants have submitted Defendant Thor's Limited Warranty, which indisputably applies to the RV, in support of their motion. *See* Dkt. No. 24-10, Thor's Ltd. Warranty. The Limited Warranty expressly provides that it "covers" the following:

> i. **ONLY** the first retail owner and any second retail owner of the **NEW** motorhome;
>
> ii. **ONLY** those portions of a **NEW** motorhome not excluded under the section "What is Not Covered," when sold by an authorized dealership and used for its intended purpose of recreational travel and camping; and,
>
> iii. **ONLY** defects in workmanship performed and/or materials used to assemble those portions of your motorhome not excluded under the section "What is Not Covered." "Defect" means the failure of the workmanship performed and/or materials used to conform with the design and manufacturing specification and tolerances of [Defendant Thor].

*See* Dkt. No. 24-10 at 2.

The Limited Warranty limits and disclaims the implied warranty of merchantability to the extent it is limited "(i) to the duration of the limited warranty[;] (ii) in scope of coverage to those portions of your motorhome covered by this Limited Warranty[;] (iii) to defects existing

at the time of sale that surfaced within the duration of the implied warranty of merchantability; and (iv) to defects that were discovered and reported within the duration of the implied warranty o[f] merchantability." *See id.* (emphases omitted). Additionally, the Limited Warranty expressly asserts that "[t]here is no warranty of any nature made by [Defendant Thor] beyond that contained in this Limited Warranty." *See id.*

The Limited Warranty further provides that, "[w]hen you request and accept the performance of warranty repairs under the terms of this Limited Warranty, you are accepting all terms of this Limited Warranty, including by way of example, warranty limitations and disclaimers, the forum selection clause and the clause reducing the time period when suit must be filed for breach." *See id.* With respect to that statute of limitations, the Limited Warranty states that its coverage ends "[t]welve (12) months after the first retail owner takes delivery of the motorhome from an authorized dealership OR after the odometer reaches 15,000 miles, whichever occurs first." *See id.* at 3. Furthermore, the Limited Warranty notifies the owner that **"ANY ACTION FOR BREACH OF THIS TWELVE (12) MONTH OR 15,000 MILE LIMITED WARRANTY OR ANY IMPLIED WARRANTIES OR FOR REVOCATION OF ACCEPTANCE MUST BE COMMENCED NOT MORE THAN FIFTEEN (15) MONTHS AFTER THE BREACH."** *See id.*

In his Amended Complaint, Plaintiff did not explicitly identify when he believed Defendant Thor breached the Limited Warranty. *See generally* Dkt. No. 21. Plaintiff purchased the RV on December 28, 2019, at which time he alleged it had various defects. *See id.* at ¶¶ 27, 29-1. Assuming this date was the date of delivery, the Limited Warranty would have covered the RV until December 28, 2020. *See* Dkt. No. 24-10 at 3. Even if Plaintiff did not allege that the breach occurred until the last day of coverage, he would have had to have

filed his complaint before March 28, 2022, fifteen months after that date. Instead, Plaintiff

commenced this action on December 14, 2022. *See* Dkt. No. 1. Even if Plaintiff did not take

delivery of the RV until March 17, 2020 – when he received it after Defendant Meyer's RV

made the initial repairs – the warranty would have expired on March 17, 2021, and Plaintiff

would have to have commenced his action against the Moving Defendants by June 17, 2022.

*See* Dkt. No. 21 at ¶ 28-2. Furthermore, the last date that Plaintiff alleges receiving service for

the defects in the RV was in April 2021, when he had been in Montana for a camping trip. *See*

*id.* at ¶ 34. It appears that the 12-month Limited Warranty no longer would have covered the

RV at that time; however, even if it had, Plaintiff would have had to have filed his complaint by

July of 2022, which he did not do.

      Plaintiff has not argued that equitable estoppel should apply to extend the limitations

period. Nonetheless, "[u]nder Indiana law, equitable estoppel requires a plaintiff to show: '1) a

representation or concealment of a material fact; 2) made by a party with knowledge of the fact

and with the intention that the other party act upon it; 3) to a party ignorant of the fact; and 4)

which induces the other party to rely or act upon the fact to his detriment.'" *Shearer v. Thor*

*Motor Coach*, No. 3:19-CV-965-PPS-MGG, 2021 U.S. Dist. LEXIS 53337, *5 (N.D. Ind. Mar.

22, 2021) (quoting *Caito Foods v. Keyes*, 799 N.E.2d 1200, 1202 (Ind. Ct. App. 2003)).[8]

Equitable estoppel only applies if there are "'efforts by [the] defendant, above and beyond the

---

[8] Notably, Plaintiff's counsel, Ms. Wells, represented the plaintiffs in *Shearer v. Thor Motor Coach*, in which the court permitted the plaintiffs an opportunity to amend their complaint and show that equitable estoppel applied to toll the statute of limitations with respect to the same Limited Warranty. *See Shearer*, 2021 U.S. Dist. LEXIS 53337, at *5-*9. However, the plaintiffs in that case failed to do so, and the Court reprimanded their failure to commence litigation earlier. *See id.* at *7-*9. This Court thus concludes that Plaintiff's counsel is aware of the fifteen-month limitations period in Defendant Thor's Limited Warranty, that the Court may address statute of limitations issues at the motion to dismiss phase of litigation, and that she could have raised the argument of equitable tolling but did not do so.

wrongdoing upon which the plaintiff's claim is founded, to prevent, by fraud or deception, the plaintiff from suing in time.'" *Id.* at *5-*6 (quoting *Shropshear*, 275 F.3d at 595; *see also Kenworth*, 134 N.E.3d at 383 (a defendant's conduct "must be of a sufficient affirmative character to prevent inquiry or to elude investigation or to mislead and hinder." (internal citation omitted))). Plaintiff has not included any specific allegations in his Amended Complaint that, even when accepted as true, would show that Defendant Thor deceptively prevented him from commencing this action within the fifteen-month statute of limitations. As such, the Court finds that Plaintiff's claim for breach of express warranty against Defendant Thor is time-barred. Furthermore, as the language in Defendant Thor's Limited Warranty explicitly limits any claim under the implied warranty of merchantability "to the duration of the limited warranty," the Court finds that Plaintiff's claim for breach of the implied warranty of merchantability against Defendant Thor is time-barred as well.

Lastly, to the extent that Plaintiff alleges that Defendant Thor breached the implied warranty of fitness for a particular purpose, the Limited Warranty expressly states that there is no warranty of any nature beyond those contained within it. The Court finds that, under the Indiana Code, this is exactly the type of conspicuous exclusion of the implied warranty of fitness that a party may include in its contracts. *See* Ind. Code § 26-1-2-316(2). Accordingly, the Court dismisses Plaintiff's claim against Defendant Thor to the extent he alleges a breach of the implied warranty of fitness for a particular purpose.

### 2. *Defendant Meyer's RV*

Under New York's UCC, "[w]ords or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever

reasonable as consistent with each other[.]" N.Y. U.C.C. § 2-316(1). This section is also identical to Indiana's Code; and, thus, New York's UCC also permits a party to exclude or modify the implied warranties of merchantability and fitness through a conspicuous writing. *See id.* at § 2-316(2). Additionally, New York's UCC specifies that "all implied warranties are excluded by expressions like 'as is[.]'" *See id.* at § 2-316(3)(a).

The following language appears on the first page of Plaintiff's Purchase Contract with Defendant Meyer's RV, directly above Plaintiff's signature:

> **Dealer makes no guarantee or warranty, express or implied.**
> This vehicle is sold by Dealer "AS-IS" with no Dealer guarantee or warranty, implied or expressed. Dealer does not affirm or adopt any manufacturer warranty(s) available to this Unit or any of its components. **DEALER HEREBY DISCLAIMS AND EXCLUDES FROM THIS SALE ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY AND ANY IMPLIED WARRANTY OF FITNESS. BUYER(S) ACKNOWLEDGE THIS DISCLAIMER IS MADE IN CAPITALIZED, BOLD AND UNDERLINED FONT AND IS "CONSPICUOUS."**

*See* Dkt. No. 24-4, Purchase Contract, at 2.

Plaintiff has not alleged that Defendant Meyer's RV's clear disclaimer of warranties is invalid under New York's UCC, such as that it is inconsistent or inconspicuous. Without such allegations, the Court finds that Plaintiff's cause of action against Defendant Meyer's RV for breach of warranty cannot stand. Accordingly, the Court grants the Moving Defendants' motion to dismiss Plaintiff's breach of warranty claims against Defendant Meyer's RV for failure to state a claim.

### D. Plaintiff's second cause of action for fraud[9]

The Moving Defendants argue that Plaintiff did not plead facts to establish a viable claim for fraud against them. *See* Dkt. No. 24-12 at 22-24. They also argue that Plaintiff's fraud claims are contradicted by documents incorporated in the complaint and are duplicative of his breach of warranty claims. *See id.* Plaintiff asserts that he adequately pled his claim for fraud in his Amended Complaint and points to his allegations that Defendant Meyer's RV's representatives repeatedly told him that various defects in the RV were "normal," gave him false explanations for them, and otherwise attempted to avoid Defendant Meyer's RV's responsibilities and discourage Plaintiff from seeking relief. *See* Dkt. No. 25 at 19-21.

#### 1. Defendant Thor

In their reply brief, the Moving Defendants correctly note that Plaintiff's memorandum of law in response to their motion to dismiss "fails entirely to identify any alleged fraud claims against [Defendant Thor]." *See* Dkt. No. 26-4 at 12 (citing Dkt. No. 25 at 19-21). Thus, because Plaintiff failed to respond to the Moving Defendant's motion to dismiss this claim against Defendant Thor, the Court deems Plaintiff's second cause of action for fraud against Defendant Thor abandoned. *See Singleton v. Fifth Generation, Inc.* No. 5:15-CV-474 (BKS/TWD), 2016 U.S. Dist. LEXIS 14000, *42-*43 (N.D.N.Y. Jan. 12, 2016) (Sannes, J.) (collecting cases). Accordingly, the Court grants the Moving Defendants' motion to dismiss that claim against Defendant Thor.

---

[9] Although Plaintiff identifies his second cause of action as one for "Fraud and Misrepresentation" in his Amended Complaint, *see* Dkt. No. 21 at ¶¶ 37-68, it appears that Plaintiff has abandoned any argument for misrepresentation and only addresses his claim as one for fraud in his memorandum of law, *see* Dkt. No. 25 at 19-21.

### 2. *Defendant Meyer's RV*

"'To prove common law fraud under New York law, a plaintiff must show that (1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance.'" *Maslin v. Angel Eyes Produce, Inc.*, No. 8:18-cv-01309 (MAD/DJS), 2019 U.S. Dist. LEXIS 100539, *10-*11 (N.D.N.Y. June 17, 2019) (D'Agostino, J.) (quoting *Banque Arabe et Internationale D'Investissement v. Md. Nat'l Bank*, 57 F.3d 146, 153 (2d Cir. 1995) (citations omitted)). "Additionally, allegations of fraud must meet the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b), which requires a party alleging fraud to 'state with particularity the circumstances constituting fraud . . . .'" *Id.* at *11 (quoting Fed. R. Civ. P. 9(b)). "The Second Circuit has explained that, in order to comply with Rule 9(b), 'the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Id.* (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) (citation omitted)).

In his Amended Complaint, Plaintiff identifies several false representations that he believes Defendant Meyer's RV's representatives made to him. First, Plaintiff alleges that one or more of Defendant Meyer's RV's employees represented to him that the RV was "a brand new product and that it was being sold to him as such," when, in fact, the RV had been used as a "demonstrator" model and had close to 1,000 miles on it that could not have been explained from the 500 mile trip from the factory in Elkhart, Indiana to Syracuse, New York. *See* Dkt. No. 21 at ¶¶ 38-39. Plaintiff additionally alleges that he eventually obtained paperwork relating

to service and repairs on the RV, which showed that there had been "prior repairs" on it before he even purchased it as "new" in December of 2019. *See id.* at ¶ 40.

Plaintiff also alleged that, when he picked up the RV on March 17, 2020, after the initial repairs, Defendant Meyer's RV "falsely represented to him that all of his concerns had been addressed and that all of the defective conditions of which he had complained had been repaired." *See id.* at ¶ 41. According to Plaintiff, those representations were false because Defendant Meyer's RV "had made only half-hearted attempts to repair the defects, or none at all, and [Defendant] Meyer's RV was well aware that it had not addressed all of his complaints or cured all of the defects." *See id.* While driving the RV to his home in New Hampshire, Plaintiff allegedly discovered "numerous other flaws, defects, and other non-conformities in the product, having varying degrees of severity but nonetheless rendering the product and/or its components and accessories unmerchantable." *See id.* at ¶ 44. For example, Plaintiff asserts that he discovered water leakage resulting in water dripping into the dining area of the residential quarters of the RV "when the slides were out." *See id.* at ¶ 46. Additionally, Plaintiff alleges that, when he retrieved the RV, he discovered that the "house battery disconnect switch did not connect to the house batteries, resulting in an inability to disconnect the house batteries from the vehicle." *See id.* at ¶ 49. Plaintiff further contends that he discovered that the AquaHot heating system was not working properly and the heat to the residential quarters "was constantly dropping off spontaneously." *See id.* at ¶ 52. He also asserts that the boarding steps would not fully retract, the television cabinet in the bedroom popped open spontaneously whenever the RV moved, and the RV did not contain any of the hand-held remote control devices needed to operate the four television sets installed within the RV. *See id.* at ¶¶ 55, 58, 61.

Plaintiff contends that, when he brought the flaws to Defendant Meyer's RV's representatives' attention after retrieving the RV in March of 2020, they "intentionally gave false explanations" for the flaws "in order to avoid their responsibilities and to discourage [Plaintiff] from seeking relief, deterring him through the imposition of delay, confusion, frustration, and inconvenience." *See id.* at ¶ 45. For example, Plaintiff alleges that Defendant Meyer's RV's personnel represented to him that the water leakage was "normal," even though Plaintiff eventually learned that the leakage was due to damage to the roof rain gutter and to large gaps in the failed slide-out seals on the front and rear slide-outs on the passenger side. *See id.* at ¶¶ 47-48. With respect to the house batteries, Defendant Meyer's RV's representatives allegedly informed Plaintiff that the condition was "normal," and gave a "cryptic and opaque explanation" of the condition occurring "when shifting from vehicle power." *See id.* at ¶ 50. According to Plaintiff, through "self-study and investigation," he determined that the reason for the condition was a major electrical wiring fault, which Defendant Thor allegedly confirmed in July of 2020 and addressed when Plaintiff left the RV with it for repairs in November of 2020. *See id.* at ¶ 51. With respect to the heater, Plaintiff alleges that Defendant Meyer's RV's personnel represented to him that the condition was a "normal" incident of switching electrical power sources, which was false because the RV had been operating only on external electrical power and there was no "switching." *See id.* at ¶¶ 53-54. Plaintiff contends that there is actually a defect in the AquaHot heater, which Defendant Thor attempted to but did not successfully fix in the fall of 2020, and the condition persists to this day. *See id.* at ¶ 54. With respect to the boarding steps, Plaintiff alleges that Defendant Meyer's RV falsely told him that the problem was due to a "low voltage condition" that was fleeting in nature and, once the RV was fully charged after a few hours of driving, the condition would rectify itself; however,

despite ample driving, the condition was not corrected until Plaintiff delivered the RV to Defendant Thor for repairs in November of 2020. *See id.* at ¶¶ 56-57. Regarding the television cabinet, Defendant Meyer's RV allegedly falsely represented to Plaintiff that it was "normal" for doors and drawers to shift while driving the RV, which was untrue as, months later, Defendant Thor determined that the reason for the condition was that the securing brackets used to latch the cabinet and keep it in place "had never been installed by the factory during assembly[.]" *See id.* at ¶ 60. Plaintiff also alleges that Defendant Meyer's RV represented to him that the television remote controls would "eventually turn up," and that "during shipment or transportation things get stored all over the place," but he never found any remote control units, they were never placed in the TV, and Defendant Thor was unwilling or unable to replace them. *See id.* at ¶¶ 62-64.

Plaintiff alleges that Defendant Meyer's RV, acting through its agents and representatives, made these misrepresentations "for the purpose of attempting to avoid their obligations, to avoid doing further work on the subject motor home, and to avoid spending further time, money, and effort on repairs for which, being covered by the warranty, they knew that they and their company would not be paid." *See id.* at ¶ 42. Plaintiff further alleges that Defendant Meyer's RV's representatives knew that he lived in New Hampshire and that, once he drove the RV home, he would not be able to bring it back for "further warranty work" except at great trouble, expense, and inconvenience. *See id.* Plaintiff argues that Defendant Meyer's RV's representatives made false representations to him to induce him to "remove the product from the dealership premises and to, in effect, wash their hands of [Plaintiff] and of the problems with the vehicle." *See id.* Furthermore, Plaintiff alleges that Defendant Meyer's RV "made said misrepresentations for the purposes of evasion and delay, in order to avoid having to

perform [its] obligations or honor [its] warranties, to discourage [Plaintiff] from obtaining relief, to deter him from vindicating his rights, and to avoid doing further work on the vehicle or spending further time, money, and effort on repairs." *See id.* at ¶ 65. "In short," Plaintiff asserts that Defendant "Meyer's RV was 'stringing along' [Plaintiff] with the hope and expectation that [it] could wear down his resolve through the imposition of delay, expense, obfuscation, and inconvenience." *See id.*

Plaintiff further alleges that he relied on Defendant Meyer's RV's misrepresentations to his detriment when he traveled from his home in Dover, New Hampshire, to Syracuse, New York, to collect the RV, accept it, and drive it home; and, by the time he discovered that Defendant Meyer's RV had failed to repair the most serious defects, "it would have been highly awkward and unwieldy for him to seek further relief from the latter." *See id.* at ¶ 43. Plaintiff asserts that "[s]eeking such relief would require two more trips to and from Syracuse and could be accomplished only at extreme trouble, expense, and inconvenience, even though [Defendant] Meyer's RV would presumably have been required to perform the repairs themselves free of charge." *See id.* He further alleges that, as a result of detrimentally relying on those false representations, he made two trips to and from Syracuse, New York, and Elkhart, Indiana, from Dover, New Hampshire, "at considerable expense and inconvenience in each instance"; he accepted delivery of the RV with the belief that the defects were repaired; he spent nearly $20,000 on annual vehicle taxes, insurance, and routine upkeep and maintenance in anticipation of keeping and using the RV; he continued to pay monthly loan payments in the amount of approximately $1,800 per month to his financier for the RV; and he refrained from taking legal action or from revoking his acceptance sooner. *See id.* at ¶ 67.

Initially, as the Moving Defendants point out in their memorandum in support of their motion, Plaintiff signed the Purchase Contract, which clearly states that the RV had 937 miles on it and provides that "Buyer(s) acknowledge that 'new' means only that the Unit has not been previously titled although the Unit may have been used in a demo or a show; new does not create any warranty or expectation of value or performance." *See* Dkt. No. 24-4 at 2. Plaintiff also signed the odometer disclosure statement, in which he acknowledged that there were 937 miles on the RV at the time of purchase. *See* Dkt. No. 24-6. Based on a plain reading of these documents, the Court finds that Plaintiff has not alleged that Defendant Meyer's RV made material misrepresentations about the number of miles on the RV or its condition as a demo model at the time of purchase.

Nonetheless, the Court finds that Plaintiff's other allegations against Defendant Meyer's RV adequately state a claim for common law fraud with the heightened particularity Rule 9(b) requires. Specifically, Plaintiff has alleged that Defendant Meyer's RV's representatives at its Syracuse, New York "Camping World RV Sales" location, in March of 2020, represented to him that certain issues with the RV's water leakage, house battery, the AquaHot heating system, boarding steps, television cabinet, and remote controls, were "normal" or were fleeting and would be rectified over time as Plaintiff drove and used the RV. Additionally, Plaintiff alleges that Defendant Meyer's RV's explanations for these issues were "cryptic and opaque." Plaintiff has alleged that those representations were false, which he supports with statements from Defendant Thor's representatives in the fall of 2020 when they repaired the RV and concluded that there were, among other issues, a major electrical wiring fault, the cabinet latches were never installed, and the slide-out seals failed on the front and rear slide-outs on the passenger side. Plaintiff also asserts that some of the issues still have not been rectified to this day,

including issues with the AquaHot heater and the missing remote control units. Based on these allegations, the Court finds that Plaintiff has demonstrated that Defendant Meyer's RV, through its representatives, made materially false representations that satisfy the first element of Plaintiff's fraud claim.

To show Defendant Meyer's RV's intent to defraud him, Plaintiff claims that Defendant Meyer's RV allegedly made misrepresentations to him to "avoid [its] obligations" or evade "honor[ing] [its] warranties," and that it was "stringing [him] along" to circumvent its obligations under a warranty. Although the Court found, above, that Defendant Meyer's RV disclaimed all warranties, Plaintiff alleges that Defendant Meyer's RV, as the dealer, would have been responsible for repairing the RV pursuant to Defendant Thor's Limited Warranty. The Moving Defendants' own submissions additionally support this. *See* Dkt. No. 24-12 at 20-21. Defendant Thor's Limited Warranty specifically includes a "Repair Remedy," which provides the following:

> "[Defendant Thor]'s sole and exclusive obligation is to repair any covered defects discovered within the warranty coverage period if:
>
> (1) within ten (10) days of your discovery of a defect you notify [Defendant Thor] or an authorized dealership of the defect;
>
> (2) AND you deliver your motorhome to [Defendant Thor] or an authorized dealership (at your expense).

*See* Dkt. No. 24-10 at 4.

Thus, although Plaintiff cannot show that Defendant Meyer's RV intended to defraud him to avoid its own obligations *to Plaintiff* under the Purchase Contract, Plaintiff has alleged sufficient facts to show Defendant Meyer's RV's intent to defraud him by avoiding its obligations *to Defendant Thor* as an authorized dealership to repair the RV under Defendant

Thor's Limited Warranty, of which Plaintiff was the intended beneficiary. As such, Plaintiff has alleged the second element of his fraud claim against Defendant Meyer's RV.

With respect to the third and fourth elements, Plaintiff has clearly asserted that he reasonably relied upon Defendant Meyer's RV's representations and suffered damages as a result in that he traveled from Dover, New Hampshire, to Syracuse, New York, to collect the vehicle, accepted it, and drove it home only to find that the flaws and defects he had brought to Defendant Meyer's RV's representatives' attention had not been repaired. In fact, Plaintiff alleges that, although Defendant Thor fixed some of the issues Defendant Meyer's RV claimed it did or could not repair, other issues in the RV – such as the defective AquaHot heater – have not been repaired to this day. Nonetheless, Plaintiff continued to attempt to have the RV repaired by authorized dealers and Defendant Thor itself, spent nearly $20,000 annually on vehicle taxes, insurance, and routine upkeep and maintenance, continued to pay his monthly loan payment of approximately $1,800 to his financier, refrained from taking legal action, and maintained the futile hope that the RV would be fully repaired for his use and enjoyment as he anticipated when he purchased it. Accordingly, the Court finds that Plaintiff has raised facts sufficient to support his claim for common law fraud against Defendant Meyer's RV, and he has done so with the particularity that Rule 9(b) requires.[10]

---

[10] To the extent that the Moving Defendants argue that Plaintiff's fraud claim against Defendant Meyer's RV is barred because the Purchase Contract contains a merger clause, the Court notes that such clause appears to pertain to the *sale* of the RV and the disclaimer of warranties. *See* Dkt. No. 24-4 at 2. However, that provision does not specifically address verbal statements, made after the sale and execution of the Purchase Contract, which were not intended to invalidate the sale of the RV, but pertained to Defendant Meyer's RV's obligation to repair the RV as an authorized dealer pursuant to Defendant Thor's Limited Warranty.

### E. Plaintiff's fourth cause of action for violations of GBL §§ 349 and 350

With respect to Plaintiff's fourth cause of action against them, brought pursuant to GBL §§ 349 and 350, the Moving Defendants assert that Plaintiff vaguely alleges that they made deceptive or misleading representations as to the quality and reliability of their goods and services and they would not honor their obligations under the New York Lemon Law and applicable warranties. *See* Dkt. No. 24-12 at 24-25 (citing Dkt. No. 21 at ¶¶ 80, 85). The Moving Defendants argue that these allegations fail to state a cause of action under GBL § 349; and, at most, Plaintiff has pled "'a private contract dispute relating to the specific facts at hand,'" which cannot support at GBL § 349 claim. *See id.* at 25.

#### 1. *Defendant Thor*

Plaintiff failed to identify in his memorandum of law any claims against Defendant Thor for violating GBL §§ 349 and 350. *See* Dkt. No. 25 at 21-23. The Court therefore finds that Plaintiff has abandoned his fourth cause of action against Defendant Thor and grants the Moving Defendants' motion to dismiss that claim. *See Singleton*, 2016 U.S. Dist. 14000, at *42-*43.

#### 2. *Defendant Meyer's RV*

"Section 349 of the GBL declares deceptive acts and practices unlawful and section 350 declares false advertising unlawful." *Barreto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795, 802 (S.D.N.Y. 2021); *see* N.Y. Gen. Bus. L. §§ 349, 350. "'The standard for recovery under [section] 350, while specific to false advertising, is otherwise identical to Section 349.'" *Id.* (quoting *Denenberg v. Rosen*, 71 A.D.3d 187, 194, 897 N.Y.S.2d 391 (1st Dep't 2010) (quoting

*Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 n.1, 774 N.E.2d 1190, 746 N.Y.S.2d 858 (2002))). "There are three requirements for a claim under [New York's] GBL: 1) the challenged act or practice was consumer-oriented; 2) the act was misleading in a material way; and 3) the plaintiff suffered injury as a result of the challenged act." *Womack v. EVOL Nutrition Assocs., Inc.*, No. 6:21-cv-00332 (BKS/TWD), 2021 U.S. Dist. LEXIS 238347, *21 (N.D.N.Y. Dec. 14, 2021) (Sannes, J.) (citing *Stutman v. Chemical Bank*, 95 N.Y.2d 24, 29, 731 N.E.2d 608, 709 N.Y.S.2d 892 (2000)).

With respect to the first element, "[c]onsumer-oriented conduct encompasses acts or practices that 'have a broad impact on consumers at large[.]'" *Tomassini v. FCA US, LLC*, No. 3:14-cv-1226 (MAD/DEP), 2016 U.S. Dist. LEXIS 202635, *12 (N.D.N.Y. Nov. 23, 2016) (D'Agostino, J.) (quoting *N.Y. Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 320 (1995) (quotation omitted)). "Conduct that is sufficiently consumer oriented includes practices that constitute 'a standard or routine practice that was "consumer-oriented in the sense that [it] potentially affect[ed] similarly situated consumers."'" *Id.* (quoting *N. State Autobahn, Inc. v. Progressive Ins. Group Co.*, 102 A.D.3d 5, 12, 953 N.Y.S.2d 96 (2d Dept. 2012) (internal citations omitted)). "'The gravamen of' a complaint brought under [New York's] GBL § 349 'must be consumer injury or harm to the public interest.'" *Richard v. Glens Falls Nat'l Bank*, No. 1:20-cv-00734 (BKS/DJS), 2021 U.S. Dist. LEXIS 39228, *46 (N.D.N.Y. Mar. 3, 2021) (Sannes, J.) (quoting *Gibson v. SCE Grp., Inc.*, 391 F. Supp. 3d 228, 251 (S.D.N.Y. 2019) (quoting *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995) (internal quotation marks and citation omitted))).

"With regard to the second element, the New York Court of Appeals has adopted 'an objective definition of deceptive acts and practices.'" *Tomassini,* 2016 U.S. Dist. LEXIS

202635, at *12 (quoting *Oswego* [*Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*], 85 N.Y.2d [20,] 26 [(N.Y. 1995)]).  "The test is whether the misrepresentation or omission is 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'"  *Id.* (quoting [*Oswego*, 85 N.Y.2d] at 26).  Lastly, "'[t]o plead an injury pursuant to either §§ 349 or 350, "a plaintiff must allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase."'"  *Womack*, 2021 U.S. Dist. LEXIS 238347, at *21-*22 (quoting *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 576 (S.D.N.Y. 2021) (citing *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015))).

Plaintiff argues in his memorandum of law that he engaged in a consumer transaction in purchasing the RV for his personal use from Defendant Meyer's RV and sought repairs on the RV from them, all of which is "plainly 'consumer-oriented[.]'"  *See* Dkt. No. 25 at 21-22.  To support this argument, he relies on a case from Watertown City Court, in which the court found that "'[i]t is clear that Fuccillo Auto Mall, a nationally recognized dealership, engages in "consumer-oriented" transactions involving, among other things, selling cars, and furnishing automotive services, including car repairs to consumers.'"  *See id.* at 22 (quoting *Tate v. Fuccillo Ford Inc.*, 15 Misc. 3d 453, 457 (Watertown City Ct. 2007)).  However, that court also quoted and relied upon the leading case from the New York Court of Appeals, *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, which held that a plaintiff attempting to establish consumer-oriented conduct under GBL §§ 349 and 350 "need not show that the defendant committed the complained-of acts repeatedly – either to the same plaintiff or to other consumers – but instead must demonstrate that the acts or practices have a broader impact on consumers at large."  *Oswego Laborers' Local 214 Pension Fund v. Marine Midland*

*Bank*, 85 N.Y.2d 20, 25 (1995); *see Tate v. Fuccillo Ford Inc.*, 15 Misc. 3d 453, 455 (Watertown City Ct. 2007).

Even accepting as true Plaintiff's allegations in his Amended Complaint that Defendant Meyer's RV made fraudulent claims pertaining to water leakage, the house battery, the AquaHot heating system, boarding steps, television cabinet, and remote controls,[11] the Court finds that Plaintiff fails to allege that such materially misleading conduct would constitute a "consumer-oriented" action as courts have fully defined it. There are no allegations in Plaintiff's Amended Complaint that Defendant Meyer's RV made these allegedly fraudulent statements to all of its customers, or that its conduct would affect consumers at large or otherwise cause harm to the public. Thus, because Plaintiff fails to allege the first element to satisfy a cause of action pursuant to GBL §§ 349 and 350, the Court grants the Moving Defendants' motion to dismiss Plaintiff's fourth cause of action against Defendant Meyer's RV.

**F. Plaintiff's fifth cause of action under New York's "Lemon Law"**

The Moving Defendants argue that the Court must dismiss Plaintiff's claims under New York's Lemon Law because he failed to register the RV in New York and because the Amended Complaint fails to state a claim against them. *See* Dkt. No. 24-12 at 25-28 (citing N.Y. GBL §§ 198-a(b)(1), (n)(8)(B)(1)-(5)). Plaintiff argues that, contrary to the Moving Defendants' assertions, New York's Lemon Law applies to a motor vehicle that "'*either* (i) was purchased,

---

[11] With respect to Plaintiff's claims that Defendant Meyer's RV made materially misleading statements pertaining to the number of miles on the RV and it's "new" condition, the Court finds, for the reasons asserted above, that Plaintiff has failed to plead such allegation to the heightened level that Rule 9(b) requires since he signed a Purchase Contract and Odometer Statement acknowledging that the RV had 937 miles on it and that a "new" RV could have been used as a demonstration model.

leased, or transferred in this state . . . *or* (ii) is registered in this state.'"  *See* Dkt. No. 25 at 17

(quoting N.Y. GBL § 198-a[(a)](2) (emphases added)).  Plaintiff asserts that the Moving

Defendants overlooked the Lemon Law's revision in 1990 when arguing otherwise.  *See id.*

(citing *Ianotti v. Safari Motor Coaches*, 225 A.D.2d 848, 849 (N.Y. App. Div. 1996)).

 Section 198-a of New York's GBL, also known as the New Car Lemon Law, "creates a

statutory warranty obligating manufacturers to repair, without charge, or under certain

conditions 'buy back[,'] any new motor vehicle which fails to conform to all express warranties

during the first 18,000 miles of operation or during the two-year period immediately following

the delivery of the vehicle, whichever comes first." *Ianotti v. Safari Motor Coaches*, 225

A.D.2d 848, 849 (3d Dep't 1996) (citing *Matter of Hynson [American Motors Sales Corp.]*, 164

A.D.2d 41, 45; *see also* [GBL § 198-a(b)(1), (c)(1), (n)(4) (1996)]).  "The 'buy-back' remedy

arises when a manufacturer, after a reasonable number of attempts, is unable to correct a defect

or condition that 'substantially impairs' the value of the vehicle[.]" *Id.* (citing [GBL § 198-

a(c)(1)]).  "When this occurs, the manufacturer, at the option of the consumer, must either

replace the vehicle with a comparable one or accept the return of the vehicle and refund the full

purchase price to the consumer." *Id.* (citing [GBL § 198-a(c)(1)]).

 "As originally enacted, a consumer could not take advantage of the Lemon Law unless

the subject vehicle was bought *and* registered in New York." *Id.* (citing [GBL former § 198-

a(2)]) (emphasis added).  "Because this requirement left many New York residents without

Lemon Law protection, the statute was amended in 1990 to extend the 'buy back' remedy to

vehicles that are either sold *or* registered in New York." *Id.* (citing [GBL § 198-a(a)(2), (c)(1)];

Mem of Attorney-General, Bill Jacket, L 199, ch 217) (emphasis added).  "The amendment,

however, expressly preserves the requirement that a vehicle must be sold *and* registered in New

York for the purpose of defining the extent of a manufacturer's duty of repair." *Id.* (citing [GBL § 198-a(b)(1)]) (emphasis added).

In this case, Plaintiff concedes that he did not register the RV in New York. However, as stated above, he argues that pursuant to GBL § 198-a(a)(2), to recover under the "buy back" remedy, he needed only to have purchased the RV in New York; he did not need to register it here. *See* Dkt. No. 25 at 17. Plaintiff's argument fails to recognize that, although the definition of "motor vehicle" in the statute includes vehicles purchased *or* registered in New York, pursuant to GBL § 198-a(n), there are special provisions applicable to motorhomes. *Compare* N.Y. GBL § 198-a(a) *with* N.Y. GBL § 198-a(n). Section 198-a(n) explicitly provides that, "[t]o the extent that the provisions of this subdivision are inconsistent with the other provisions of [Section 198-a], the provisions of this subdivision shall apply." N.Y. GBL § 198-a(n)(1).

Notably, the Lemon Law has been amended since the court in *Ianotti* explained the 1990 amendments, particularly with respect to its applicability to motorhomes. *Compare* N.Y. GBL § 198-a (2023) *with* N.Y. GBL § 198-a (1996). In 2004, the legislature amended the Lemon Law to include the "New Motor Home Lemon Law Bill of Rights," a lengthy provision that sets forth both the manufacturer's and consumer's rights when a newly-purchased motorhome contains defects that are not primarily in its living quarters. *See generally* N.Y. GBL § 198-a(n)(B) (2023); *see also* Dkt. No. 26-3, N.Y. Bill Jacket, 2004 S.B. 5533, Ch. 635. As is relevant here, the New Motor Home Lemon Law Bill of Rights provides the following:

> (1) IN ADDITION TO ANY WARRANTIES OFFERED BY THE MANUFACTURER, YOUR NEW MOTOR HOME, **IF PURCHASED AND REGISTERED IN NEW YORK STATE**, IS WARRANTED AGAINST ALL MATERIAL DEFECTS FOR EIGHTEEN THOUSAND MILES OR TWO YEARS, WHICHEVER COMES FIRST. . . .
>
> . . .

(2) UPON NOTIFICATION, THE PROBLEM MUST BE CORRECTED FREE OF CHARGE.

(3) IF, WITHIN THE FIRST EIGHTEEN THOUSAND MILES OF OPERATION OR DURING THE PERIOD OF TWO YEARS FOLLOWING THE DATE OF ORIGINAL DELIVERY OF THE MOTOR VEHICLE TO SUCH CONSUMER, WHICHEVER IS THE EARLIER DATE[,] THE MANUFACTURER OF A MOTOR HOME OR ITS AGENTS OR ITS AUTHORIZED DEALERS OR REPAIR SHOPS TO WHICH THEY REFER A CONSUMER ARE UNABLE TO REPAIR OR CORRECT ANY COVERED DEFECT OR CONDITION WHICH SUBSTANTIALLY IMPAIRS THE VALUE OF THE MOTOR HOME TO THE CONSUMER AFTER A REASONABLE NUMBER OF ATTEMPTS, THE MOTOR HOME MANUFACTURER, AT THE OPTION OF THE CONSUMER, SHALL REPLACE THE MOTOR HOME WITH A COMPARABLE MOTOR HOME, OR ACCEPT RETURN OF THE MOTOR HOME FROM THE CONSUMER AND REFUND TO THE CONSUMER THE FULL PURCHASE PRICE . . .

N.Y. GBL § 198-a(n)(B)(1), (3)-(4) (2023) (emphasis added).

The Court finds that the language in the New Motor Home Lemon Law Bill of Rights, as amended in 2004, requires a plaintiff of a new motorhome seeking either to enforce a manufacturer's duty of repair or pursue the "buy back" option to have both purchased *and* registered the motorhome in New York State. *See id.* at § 198-a(n)(B)(1). This requirement is different from that in the definition provided in subdivision (a)(2) of the Lemon Law permitting claims if the buyer purchased *or* registered the motor vehicle in New York. *See id.* at § 198-a(a)(2). As discussed above, pursuant to subdivision (n), the Court must give controlling authority to terms in the Motor Home Lemon Law Bill of Rights if they are inconsistent with those elsewhere in the Lemon Law; and, thus, the Court finds that Plaintiff must have purchased *and* registered the RV in New York to recover under the Lemon Law. Because Plaintiff

concedes that he did not register the RV in New York, the Court finds that he is not protected under New York's Lemon Law and dismisses his fifth cause of action against Defendant Thor.[12]

### G. Plaintiff's sixth cause of action for revocation of acceptance

#### 1. Defendant Thor

The Indiana Code affords buyers the equitable remedy of revocation of acceptance in whole or in part. *See* Ind. Code § 26-1-2-608. That statute provides that revocation of acceptance is appropriate under the following circumstances:

> (1) The buyer may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him if he has accepted it
>
> > (a) On the reasonable assumption that its non-conformity would be cured and it has not been seasonably cured; or
> >
> > (b) Without discovery of such non-conformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.
>
> (2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.
>
> (3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them.

---

[12] Although it does not appear in Plaintiff's Amended Complaint that he asserts this cause of action against Defendant Meyer's RV, *see* Dkt. No. 21 at ¶¶ 84-121, the Court notes that a plaintiff may only pursue a remedy under New York's Lemon Law against manufacturers – not against dealers, *see Lindsay v. Colton Auto, Inc.*, 48 A.D.3d 1262, 1263 (4th Dep't 2008) (concluding that a plaintiff cannot obtain relief against a dealer who sold him an RV because New York's Lemon Law only applies to manufacturers (citations omitted)). Thus, to the extent Plaintiff asserts his fifth cause of action against Defendant Meyer's RV, the Court dismisses that claim as well.

*Id.*

Courts applying this law have found that the remedy of revocation of acceptance is "unavailable to a plaintiff who has only sued a remote manufacturer." *Castagna v. Newmar Corp.*, No. 3:15-CV-249-TLS, 2016 U.S. Dist. LEXIS 81013, *28-*29 (N.D. Ind. June 22, 2016) (citing, *e.g.*, *Skodras v. Gulf Stream Coach, Inc.,* Cause No. 3:08 CV 441, 2010 U.S. Dist. LEXIS 2010, 2010 WL 145370, at *5 (N.D. Ind. Jan. 8, 2010) ("[T]he remedy of revocation of acceptance or return of all monies paid which [the plaintiff] identifies as being against the manufacturer do not apply under the specific wording of the Indiana statutes."); *Pizel* [*v. Monaco Coach Corp.*], 364 F. Supp. 2d [790,] 795 [(N.D. Ind. 2005)] ("[T]he code refer[s] to the word seller, not manufacturer, when talking about revocation, indicating that revocation was only intended against a seller."); *see also Skodras*, 2010 U.S. Dist. LEXIS 2010, 2010 WL 145370, at *5 (noting that "the majority of courts addressing this issue" in other states "have concluded that without contract privity, a buyer cannot revoke a contract against a remote manufacturer.")). As Defendant Thor is the manufacturer of the RV at issue, the Court finds that Plaintiff cannot maintain a claim against it for revocation of acceptance pursuant to the Indiana Code. The Court thus dismisses Plaintiff's sixth cause of action against Defendant Thor.

### 2. *Defendant Meyer's RV*

New York's UCC similarly provides plaintiffs with the equitable remedy of revocation of acceptance in whole or in part. *See* N.Y. U.C.C. § 2-608. The language in this statute is identical to that set forth above in the Indiana Code. Plaintiff's Purchase Contract with

Defendant Meyer's specifically includes the following disclaimer of the remedy of revocation of acceptance, asserting in relevant part:

> **BUYER(S) UNDERSTAND AND AGREE THAT THE EXPRESS TERMS OF ANY MANUFACTURERS WRITTEN WARRANTY, TO THE EXTENT ANY EXIST AND APPLY TO THE UNIT, CONTAIN AND CONSTITUTE BUYER(S)' EXCLUSIVE AND SOLE REMEDY FOR ANY PROBLEMS OR DEFECTS THE UNIT MIGHT CONTAIN, BUYER(S) UNDERSTAND AND AGREE THAT ANY OTHER POTENTIALLY AVAILABLE REMEDY, UNDER THE UNIFORM COMMERCIAL CODE OR OTHERWISE, INCLUDING BUT NOT LIMITED TO REJECTION, RESCISSION, OR REVOCATION OF ACCEPTANCE, ARE HEREBY DISCLAIMED BY AND UNAVAILABLE AGAINST DEALER.**

*See* Dkt. No. 24-4 at 2.

As discussed with respect to Plaintiff's first cause of action alleging breach of warranties, Plaintiff has not alleged that Defendant Meyer's RV's disclaimer of warranties is invalid under New York's UCC or that it is inconsistent or inconspicuous. Without such allegations, the Court finds that Plaintiff's claim against Defendant Meyer's RV for revocation of acceptance must fail as Defendant Meyer's RV has explicitly disclaimed such remedy. Accordingly, the Court grants the Moving Defendants' motion to dismiss Plaintiff's sixth cause of action for revocation of acceptance against Defendant Meyer's RV.

### H. Plaintiff's seventh cause of action under the Magnuson-Moss Warranty Act

"The MMWA provides for a private right of action if a consumer is damaged based on a supplier's failure to comply with its obligations under a written or implied warranty." *Clemmons v. Upfield US, Inc.*, No. 22-cv-355 (PKC), 2023 U.S. Dist. LEXIS 57135, *25-*26 (S.D.N.Y. Mar. 31, 2023) (citing 15 U.S.C. § 2310(d)(1)). In light of the Court's finding that

Plaintiff's Amended Complaint does not plausibly allege a breach of either express or implied warranties against either of the Moving Defendants, the Court further finds that Plaintiff necessarily fails to state a claim pursuant to the MMWA as well.  *See id.* (citing *Cosgrove v. Oregon Chai, Inc.*, 520 F. Supp. 3d 562, 587 (S.D.N.Y. 2021) ("[T]he absence of a qualifying warranty necessitates dismissal of the MMWA claim."); *Garcia v. Chrysler Grp. LLC*, 127 F. Supp. 3d 212, 232 (S.D.N.Y. 2015) ("To state a claim under the MMWA, plaintiffs must adequately plead a cause of action for breach of written or implied warranty under state law.")). Accordingly, the Court dismisses this claim against the Moving Defendants.

### III. CONCLUSION

After carefully considering the entire file in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that the Moving Defendants' motion to dismiss Plaintiff's Amended Complaint, *see* Dkt. No. 24, is **DENIED in part** and **GRANTED in part**; and the Court further

**ORDERS** that the Moving Defendants' motion to dismiss Plaintiff's Amended Complaint is **DENIED** with respect to Plaintiff's second cause of action for common law fraud against Defendant Meyer's RV; and the Court further

**ORDERS** that the Moving Defendants' motion to dismiss Plaintiff's Amended Complaint is **GRANTED** in all other respects; and the Court further

**ORDERS** that this matter is referred to Magistrate Judge Lovric for all further pretrial matters.[13]


**IT IS SO ORDERED.**

Dated:  August 14, 2023
        Syracuse, New York

Frederick J. Scullin, Jr.
**Senior United States District Judge**

---

[13] The Court notes that Plaintiff's remaining claims include the following: (1) breach of warranty against Defendant Freightliner; (2) common law fraud against Defendant Meyer's RV; (3) breach of contract against Defendant United Service Protection Corporation; and (4) violations of New York's Motor Vehicle Lemon Law against Defendant Freightliner.